FLOY STEVENS, et al., Respondents, v. OLIVER C. CHAPIN, Appellant.

Kansas City Court of Appeals, February 7, 1921.

1. **APPEAL AND ERROR: New Trial: Stenographer's Notes Destroyed: Depends Upon Circumstances and Determined upon Principles Analogous to Equitable Doctrines.** The right of appeal is a creature of the statute, and there being no statute providing for a new trial because the stenographer's notes are destroyed, the right to

Stevens v. Chapin.

have a cause remanded on this ground must depend upon the circumstances, and any relief granted on such ground should be determined upon principles analogous to equitable doctrines rather than strict rules of law.

2. ————: Where Stenographer's Notes Destroyed Appellant not Entitled to New Trial as Matter of Right, and Must be Wholly Without Fault. Appellant by reason of destruction of stenographer's notes is not entitled as a matter of strict, absolute, legal right to a new trial, but the court may, in the exercise of inherent, extraordinary powers, grant same to prevent injustice being done to one who is himself wholly without fault or blame, and such freedom from fault or blame is a necessary prerequisite to the granting of the relief sought.

3. ————: Appellant Seeking New Trial Because of Destruction of Stenographer's Notes Must Exercise Due Diligence and be Free from Laches. Party seeking new trial by reason of destruction of stenographer's notes must not only be free from actual fault or negligence, but must also show that he exercised due diligence and was free from laches.

4. ————: Appellant Failing to Exercise Due Diligence in Obtaining Transcript Before Destruction of Evidence not Entitled to New Trial. Under section 12669, Revised Statutes, 1919, upon appeal, it is the stenographer's duty to furnish transcript of evidence, and under section 12671 he is entitled to prepayment of his fees therefor, and while section 1460, Revised Statutes 1919, gives appellant until the time for filing abstract in which to file bill of execeptions, it was the duty of appellant not to actively delay the stenographer in the performance of his work, 'and where a stenographer has started to transcribe the evidence, but stopped because he could not obtain guaranty of payment from appellant, a non-resident of the State, and whose attorney informed him he need not proceed with the work, and was not thereafter authorized to complete same, and courthouse burned destroying notes, it is *held*, that if it had not been for appellant's postponement, his inability to have stenographer's notes transcribed would not have occurred, and by reason of his failure to exercise due diligence he is not entitled to new trial.

Appeal from the Circuit Court of Pettis County.—*Hon. Hopkins B. Shain*, Judge.

AFFIRMED.

*George A. Barnett* for respondent.

*Clarence S. Palmer* for appellant.

TRIMBLE, P. J.—Plaintiffs' brought suit to cancel three certain special tax bills issued by the city of Sedalia for the paving of a street upon which their three lots abutted. The grounds for the relief sought were: 1. Failure of the resolution, declaring the work necessary, to describe the character of the work to be done, or to provide that the cost should be assessed against the abutting property or to disclose the method by which the same was to be paid for. 2. Because there was no competitive bidding, all other contractors except defendant being excluded from bidding because of an agreement in advance as to the price to be paid and that the pavement should be constructed of an unknown kind called "Dolarway pavement," a patented or trade name for pavement constructed by defendant of which he was the sole agent and the only one who could bid on the contract and supply such pavement. 3. Because the ordinance authorizing the work was passed notwithstanding a remonstrance, signed by a majority of the abutting owners, was filed within ten days after the resolution was passed, and the council was without authority to pass such ordinance. 4. Because the pavement was not according to contract or specifications, was worthless, and in a short time disintegrated and gave way so that great sunken places and cracks appeared in the pavement in front of plaintiffs' property in which water collected and stood.

Trial was had on December 27, 1919, and judgment was rendered in plaintiffs' favor on that day. Motion for new trial was duly filed, and, on January 3, 1920, was overruled, and defendant on that day took an appeal with leave to file his bill of exceptions on or before the close of the February term, 1920.

The appeal thus taken was returnable to the October term, 1920, of this Court; and the case has been sub-

mitted to us with no bill of exceptions but simply on appellant's motion to reverse the judgment and remand the cause for a new trial for the reason that, on account of the burning of the court house in Sedalia on June 16, 1920, the preparation of a bill of exceptions has been rendered impossible. The question before us is whether, upon the particular facts of this case, appellant is entitled to such order to the end that he may again have his case adjudged with the right of appeal upon a complete record should the decision of the trial court be adverse to him.

From affidavits filed in support of and against the motion the following facts appear:

Upon taking the appeal defendant, who is alleged in the petition to be a non-resident of the State, directed the court stenographer to make a transcript of the evidence and copies of the exhibits used in the trial for the purpose of preparing a bill of exceptions. The stenographer began the work of transcription, and had typewritten about 160 pages thereof when, on account of the magnitude of the work yet to be done and because he had in the past failed to receive his fees for work done on other bills, the stenographer became concerned as to whether he would be paid for this work. He thereupon asked Mr. C. C. Kelly, local counsel for defendant (his chief counsel being Mr. Clarence S. Palmer of Kansas City), if defendant was good and whether he had any property in this State. Mr. Kelly replied he did not know. Mr. Kelly was then asked if he would personally guarantee the payment of such fees and he declined to do so, but promised to write defendant to forward same. The stenographer told Mr. Kelly that if it were not agreeable to pay before the work was done, the money therefor could be deposited in a bank, with the circuit clerk, or with Mr. Kelly himself, until the work was completed. A few days thereafter, Mr. Kelly told the stenographer he had received a letter from defendant, that no money was sent, but that the letter stated there was no hurry about getting out the bill of exceptions as

that could be done any time before the abstract for the appellate court had to be printed, and indicated that the stenographer had no need to proceed further with the preparation of the bill at that time. The stenographer thereupon laid aside the work he had done, and did nothing further thereon as he understook he was not expected to until some satisfactory arrangement was made. The stenographer was never thereafter requested to proceed with said work. Had the stenographer been given satisfactory assurance that he would be paid, he would have proceeded with the work and could easily have had it ready by the commencement of the May term, 1920, or sooner if requested.

On June 16, 1920, the court house in Sedalia burned, causing the destruction of the stenographer's notes, the motion for new trial and certain exhibits which were introduced in evidence, as well as that portion of the transcript which the stenographer had prepared. The records and files in the circuit clerk's office were not destroyed, but the stenographer's office, which was in the court house, was burned and everything therein was consumed, including the exhibits and papers in the case, the stenographer's notes and the motion for new trial. On the next day, June 17, 1920, Mr. Kelly, defendant's local counsel, died. The stenographer swears he does not know whether the bill of exceptions, if properly prepared, would have been taken and paid for; and that even if he had prepared the same, it would have remained in his office (and therefore would have been burned) because no request was ever made for the bill of exceptions and no offer was ever made to pay for same.

It further appears, from the affidavit of Mr. George W. Barnett, that had the bill of exceptions been prepared and filed, it would have been preserved in the files and vault of the circuit clerk's office where such papers were kept and would not have been burned; also that if the judgment is reversed and a new trial ordered, plaintiffs will, on another trial, be deprived of much evidence in its favor consisting of documents and cor-

respondence with the city authorities and much other evidence which was introduced on the issues involved.

The affidavit of Mr. Palmer, defendant's chief counsel, shows that he kept no notes of the testimony at the trial, relying upon his ability to have the same transcribed by the stenographer in case it were desired; that several witnesses, more than a half dozen, were examined and gave testimony; that various exhibits were introduced, some of which cannot be produced because of said fire.

There is no showing that any attempt was made to prepare a bill of exceptions, or to agree upon the evidence, either documentary or oral, that was introduced at the trial, or the substance thereof. It is true, the stenographer says he cannot transcribe the testimony and no doubt he cannot; and Mr. Palmer says it is impossible to get up the bill of exceptions owing to the destruction caused by the fire. But, should one side of a cause be permitted to decide for itself that a sufficient bill could not be prepared without making any effort in conjunction with the other side or consultation with the trial judge to ascertain whether or not a bill could be made? From the character of the evidence introduced, it does not appear that it would have been impossible to get up a bill, had such an effort been made. No effort of any kind was made in this direction; no application was made to this court for a continuance of the matter until such effort could be made; and indeed, after calling the stenographer off, there was no subsequent desire manifested that a bill of exceptions would be asked for until after the fire occurred, and then the court is asked to grant a new trial because of the fire.

Under the foregoing circumstances, are we justified in reversing the judgment and ordering a new trial? The right of appeal is a creature of the Statute, and since there is no statute providing for a new trial because the stenographer's notes are destroyed, the right to have a cause remanded on this ground must, in a large degree, depend upon the circumstances of each case. And the

question whether appellant is to be granted relief on such ground should be determined upon principles analogous to equitable doctrines rather than the strict rules of law. Appellant is not asking for something to which he is entitled as a matter of strict, absolute, legal right but for that which the court, in the exercise of inherent extraordinary powers, will grant to prevent a possible injustice being done to one who is himself wholly without fault or blame. In every case which we have examined, this freedom from fault or blame on the part of one seeking such relief is a necessary prerequisite to the granting of the relief sought. [Woods v. Bottmos, 206 S. W. 410; Elliott v. State, 113 Pac. 213; O'Donnell v. McCool, 142 Pac. 1135; Barr v. State, 136 S. W. 454; Bailey v. United States, 104 Pac. 917; 4 C. J. 213; Borrowscale v. Bosworth, 98 Mass. 34.]

In the case of State v. Garver, 113 Mo. 602, the Supreme Court held they should have "great hesitancy" in reversing a judgment on this ground, but "being satisfied the defendant is entirely without negligence or blame in the matter and has made honest efforts to remedy" the defect, the relief was granted.

Not only must an appellant in such case be free from actual fault or negligence, but he must also show that he exercised due diligence and was free from laches. In Todd v. Security Ins. Co., 206 S. W. 412, the appellant not only was without blame but he exercised due diligence in seeking to obtain a bill of exceptions. In Hume v. Bowie, 148 U. S. 245, 247, 253, appellant prepared a bill and endeavored to have it agreed to and he was "without laches." In Nelson v. Marshall, 77 Vt. 44, 47, a party seeking the relief here sought must be "without laches on his part." On the other hand, the relief has been denied where the appellant did not exercise due diligence. [State v. Thompson, 130 Mo. 438.] So also where the record did not show that any effort was made to secure the bill, [Sanders v. Wise, 83 S. E. 77; Saxton v. Herrington, 68 Neb. 446; Choate v. Alabama, etc. R. Co., 170 Ala. 590.] In McKinley v. McKinley,

123 Iowa, 574, it was refused because of a lack of diligence. [See, also, Dunbarton Realty Co. v. Erickson et al., 143 Iowa, 677; Golden Terra, etc., Co., v. Smith, 11 N. W. 98; In re Hayward, 154 Cal. 312; Owen v. Cibolo Creek Mill., etc., Co., 43 S. W. 297.]

It is quite true that the burning of the court house was without fault on the part of appellant, but whose fault was it that the bill was not prepared during the months that preceded that occurrence? The trial court allowed him until the close of the February term to have the bill filed and had he done so, it would not have been destroyed. It would have been at least prepared and turned over to counsel long before that, but for the act of defendant in calling the stenographer off of the work and refusing to assure him that it would be taken and paid for. Section 12669, Revised Statutes 1919, provides that it shall be the stenographer's duty to furnish a transcript of the evidence ''upon the payment to him of the fee hereinafter provided;'' and section 12671 entitles him to receive from appellant 15 cents per folio of 100 words. This being so, the stenographer is not required to furnish such transcript or any part thereof without the prepayment of his fees. [State ex rel. v. Supple, 56 Pac. 20.] Hence, when defendant refused to assure the stenographer that his fees would be paid, he, in legal effect, was responsible for the delay which occurred in getting the bill out and the consequent inability to get the bill out arising thereafter by reason of the fire. If it had not been for the delay caused by defendant, the bill would have been filed within the time allowed by the court. It is true section 1460, Revised Statutes 1919, provides that it may be allowed and filed at any time before appellant shall be required to file his abstract, but said section also provides that it may be filed within such time as the court shall allow. Now, while the section gives appellant until the time for filing the abstract in which to file his bill of exceptions, yet the other provision is in the statute and should not be construed to be wholly without meaning; and it would

seem that if appellant *actively* delays the time for preparing and filing the bill beyond the time allowed by the court, he should run the risk of any inability to file the bill arising thereafter and within the additional time allowed by the statute. Thus in one case it was held that where the delay had been so long that the judge had forgotten the facts, the party delaying will be held responsible. [Alford, etc., Co. v. Sawyer, 2 McG. (La.) 190.] The liability of the Judge to forget the facts after the lapse of time may be one reason for still permitting him to fix a time in which the bill should be filed. This is not likely to occur when the stenographer's notes have preserved what was done, but it is very likely to occur when they, for any reason, do not exist. In the case at bar, however, no effort was made to ascertain whether the judge could, either from memory or notes made of the witnesses and the substance of their testimony, furnish a reasonably accurate history of what had been introduced and the testimony offered.

Appellant contends that there is nothing in the record to show that he knew the stenographer had commenced work on the bill when he was asked to assure the payment of the fees. There is nothing in the record showing that he did not know it, while the stenographer's affidavit shows that he was given to understand that he should not proceed *further* with the work at that time. Besides, the fact that the time for filing the bill was, according to the order of the court, until the close of the February term, would give defendant reason to think that the stenographer was endeavoring to comply with that order, and that this was what he was desiring to do when he inquired concerning his fees. The natural inference from the stenographer's inquiry was that at least he was ready to begin on the work and the reply he received from defendant, through Mr. Kelly, shows that was the idea conveyed. Again, what right had he, appellant, to *delay* the work of the stenographer in getting out this bill? If the bill was to be gotten out, it was the stenographer's duty to do so as soon as possible, and

appellant had no right to delay that work until some time in the future when for any reason it might not be possible to do it. He had no right to actively delay the stenographer in the performance of his work, even though appellant did not have to file said bill till in the fall of that year; or at least if he does so postpone it, he should run the risk of whatever arises after such postponement. There is nothing in the record showing any reason for thus actively delaying and postponing the preparation of the bill, and while appellant could not foresee that the court house would burn, yet, if it had not been for appellant's postponement of the matter, his inability to have the stenographer's notes transcribed would not have occurred.

We are of the opinion that the motion should be overruled; and there being nothing in the record proper to justify a reversal, the judgment is affirmed. It is so ordered. All concur.